No. 9386.

EMPLOYERS' MUTUAL INSURANCE COMPANY *v.* THE
INDUSTRIAL COMMISSION OF COLORADO ET AL.

1. ACCIDENT INSURANCE—*Construction of Policy.*  The policy requiring a cash deposit on a day named, and the payment of a premium at a later date, and providing that if any deposit was not made, or any premium not paid, within ten days of its maturity, the policy *ipso facto* lapsed.  *Held* that both the deposit, and the payment of the premium were required, to the continuance of the policy.

2. PAYMENT—*Check Accepted by Mistake.*  An accident insurance company made it a practice not to accept a delinquent check until examination made as to whether the insured had sustained an accident after his default.  A clerk of the company by mistake sent the check to the bank for deposit, on the day

of its receipt. This was on Saturday, and upon the following Monday the company withdrew the check, and the amount thereof was charged against it by the bank. The check was returned to the person from whom it came. *Held* that the mistake of the clerk did not charge the company.

3. WAIVER OF DEFENSES—*An Act Done in Ignorance,* of the existence of facts which warrant the defense effects no waiver.

*Error to Denver District Court, Hon. Neil F. Graham, Judge.*

*Department Two.*

Mr. LEROY MCWHINNEY, Mr. L. WARD BANNISTER, Mr. SAMUEL M. JANUARY, Messrs. HUGHES & DORSEY and Mr. W. M. BOND, for plaintiff in error.

Hon. VICTOR E. KEYES, Attorney General, Mr. JOHN S. FINE, Asistant, Mr. EDMUND J. CHURCHILL and Mr. EDWARD AFFOLTER, for defendants in error.

Mr. Justice Denison delivered the opinion of the court.

THE plaintiff in error brought suit in the District Court under §§ 78-82 of Chapter 179 S. L. 1915, to review the findings of the Industrial Commission against plaintiff in error upon a claim for the death of one LaSalle, who was killed by accident while in the employ of defendant, The Big Lake Fuel Company. The judgment was for defendant thus sustaining the commission's finding.

The sole question before the commission and the court was whether a certain policy issued by the Insurance Company was in force at the time of the accident. The Commission decided that it was in force.

The Commission's findings of fact are full and detailed. We are of the opinion that they do not justify the deduction that the policy was in force at the time of the accident but compel the opposite conclusion.

The policy was dated June 28th, 1916, and by its terms was to take effect from that date. It required a cash deposit at its issue, which was made, also another on July

1st. These deposits were to secure the payment of premiums. The policy required the first premium to be paid not until August 1st, because the amount thereof could not be ascertained until the pay roll of the employer for July, upon which the premium was computed, had been reported, and this premium paid for insurance for past time. By the terms of the policy, if payment of a deposit or premium was not made within ten days after its maturity the policy *ipso facto* lapsed, as of midnight of the last day of the calendar month before its maturity without notice to anybody. These provisions seem to have been necessary to prevent delay of premiums until after an accident. Neither the deposit due July 1st nor the premium due August 1st had been paid when the accident occurred.

LaSalle was killed about 2 p. m., Friday, August 11th, 1916. Afterwards, on the same day, the employer company drew a check falsely dated August 10th, on a Lafayette bank, for $40.00, the amount of the required deposit, and mailed it to the Ralph W. Smith Agency Company, the insurance company's underwriting manager, who received it about 11 a. m., Saturday, August 12th, and immediately sent it to the treasurer of the insurance company. The practice of the company and the treasurer was to hold delinquent checks till an investigation showed that there had been no accident during delinquency. One Small, the treasurer's clerk, intending to follow this custom, nevertheless by mistake sent the check with other items to the Denver National Bank for deposit before noon on Saturday and did not discover the mistake till Monday morning. The bank gave the insurance company credit for the check. Monday morning, however, before the bank opened for business, Small, having discovered the error and learned of the accident, withdrew the check and the bank charged back the amount to the insurance company. The check was then returned to the employer company which drew it.

Having found the facts substantially as above, the commission finds "that the receipt of the check and the deposit

of said check in the bank constituted payment under the policy of the amount due thereunder and that the said policy was thereby continued in full force and effect."

The conclusion is impossible, in view of the previous findings, for several reasons.

1. The check was never accepted as payment. It was held pending investigation. The deposit in the bank was, according to the findings, a mistake; i. e., an involuntary act, which did not affect the situation one way or the other. The company did not intend to accept the check if the investigation should reveal an accident during delinquency, it did reveal it and the company returned the check.

2. The check is found by the commission to have been drawn to pay the second deposit. The premium due August 1st has never been paid. The payment of both is required by the policy. One is as important as the other. The failure to pay either automatically cancels the policy. The check cannot be regarded as a payment of both, as the commission seems to have thought, because it was not big enough and was not so intended.

3. The check was fraudulent, drawn after the accident, antedated with intent to deceive and sent in the hope that the company would accept it before it learned of the accident and so subject itself to the loss. Justice cannot sanction such a proceeding by giving the perpetrator the fruits of it.

Something has been suggested about waiver and estoppel, but the action of the insurance company could not amount to waiver, because it was done in ignorance of the accident and of the fact that the check had been drawn thereafter, nor to estoppel because the employer did not rely on it or even know of it.

There was some evidence of an oral variation of the policy, giving till July 28th to make the second deposit, but if true we do not think it competent, and even though both true and competent, it would not affect the result, because in any event the second deposit was delinquent when the check was drawn.

There is also some claim that since the first deposit was not made till July 7 and the binding receipt not issued till then, the effect of the provisions of the policy must be calculated from that day instead of from June 28th. Such claim is contrary to the policy itself and ignores the undisputed evidence that the employer especially requested and insisted that the policy become effective as of June 28th, and the binding receipt so reads.

The judgment should be reversed with directions to the district court to vacate, so far as the insurance company is concerned, the findings and award of the commission, and to direct the commission to dismiss the proceedings as to that company.

Garrigues, C. J., and Scott, J., concur.